# 24-2481 (L)

## 24-2630(CON)

### United States Court of Appeals
### for the Second Circuit

SUMMIT LIFE CENTER, INC., a New York not-for-profit corporation, THE EVERGREEN ASSOCIATION, INC., a New York not-for-profit corporation doing business as Expectant Mother Care, EMC FRONTLINE PREGNANCY CENTERS,

*Plaintiff-Appellees,*

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, GIANNA'S HOUSE, INC., CHOOSE LIFE OF JAMESTOWN, INC., doing business as Options Care Center,

*Plaintiff-Appellees-Cross-Appellants,*

v.

LETITIA JAMES,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of New York

**BRIEF FOR APPELLANT**

BARBARA D. UNDERWOOD
 *Solicitor General*
ANDREA OSER
 *Deputy Solicitor General*
JONATHAN D. HITSOUS
 *Assistant Solicitor General*
 *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Appellant
The Capitol
Albany, New York 12224
(518) 776-2044

Dated: December 24, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

PRELIMINARY STATEMENT ...........................................................iii

ISSUES PRESENTED .......................................................................2

STATEMENT OF THE CASE ............................................................3

    A.   Background .............................................................................3

        1.   Medication abortion and APR ........................................3

        2.   The Attorney General's Civil Enforcement Action in State Court..............................................................5

    B.   Proceedings Below .................................................................9

    C.   The District Court's Preliminary Injunction Order ...............13

STANDARD OF REVIEW..................................................................17

SUMMARY OF ARGUMENT ............................................................18

ARGUMENT

POINT I

THE NIFLA PLAINTIFFS' COMPLAINT WAS SUBJECT TO DISMISSAL UNDER THE *YOUNGER* ABSTENTION DOCTRINE......................................21

POINT II

THE NIFLA PLAINTIFFS FAILED TO DEMONSTRATE THEIR ENTITLEMENT TO A PRELIMINARY INJUNCTION ..................................300

    A.   The NIFLA Plaintiffs Are Unlikely To Succeed on Their First Amendment Claim.........................................31

**Page**

  1. The NIFLA plaintiffs' intended advertising of APR is commercial speech. ....................................... 33

  2. The NIFLA plaintiffs failed to demonstrate that their intended advertising was neither false nor misleading.................................................................. 411

 B. The District Court Failed To Weigh Properly the Remaining Preliminary-Injunction Factors. .......................... 47

  1. The NIFLA plaintiffs failed to demonstrate irreparable harm warranting a preliminary injunction. ....................................................................... 48

  2. The preliminary injunction harms the public interest. ..................................................................... 500

CONCLUSION ...................................................................... 544

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Am. Academy of Pain Mgmt. v. Joseph,*
353 F.3d 1099 (9th Cir. 2004) ............................................................ 36

*Anderson v. Treadwell,*
294 F.3d 453 (2d Cir. 2002) ............................................................... 33

*Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.,*
134 F.3d 87 (2d Cir. 1998) ............................................................ 33, 40

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
492 U.S. 469 (1989) ...................................................................... 38-39

*Bigelow v. Virginia,*
421 U.S. 809 (1975) .......................................................................... 41

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60 (1983) ............................................ 32-33, 35-36, 40-41

*Bristol-Myers Squibb Co. v. Connors,*
979 F.3d 732 (9th Cir. 2020) .............................................................. 23

*Cedar Rapids Cellular Telephone, L.P. v. Miller,*
280 F.3d 874 (8th Cir. 2002) ......................................................... 23-24

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,*
447 U.S. 557 (1980) ..................................................................... 24, 32

*Consol. Gold Fields PLC v. Minorco S.A.,*
871 F.2d 252 (2d Cir. 1989) ............................................................... 46

*D.L. v. Unified Sch. Dist. No. 497,*
392 F.3d 1223 (10th Cir. 2004) .......................................................... 28

*Davis v. N.Y. City Hous. Auth.,*
166 F.3d 432 (2d Cir. 1999) ............................................................... 45

*Diamond "D" Constr. Corp. v. McGowan,*
282 F.3d 191 (2d Cir. 2002) ................................................... 17, 23, 30

**Cases**                                                      **Page(s)**

*Edward Lewis Tobinick, MD v. Novella,*
848 F.3d 935 (11th Cir. 2017) .......................................... 36

*Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.,*
805 F.3d 425 (2d Cir. 2015) ............................................. 22

*First Resort, Inc. v. Herrera,*
860 F.3d 1263 (9th Cir. 2017) .......................................... 37

*Friedman v. Rogers,*
440 U.S. 1 (1979) .......................................................... 51

*Gaudiya Vaishnava Soc'y v. City & Cnty. of San Francisco,*
952 F.2d 1059 (9th Cir. 1990) .......................................... 39

*Gilbertson v. Albright,*
381 F.3d 965 (9th Cir. 2004) ........................................... 28

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,*
764 F.3d 210 (2d Cir. 2014) ............................................. 17

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.,*
721 F.3d 264 (4th Cir. 2013) ...............................34, 36-37

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.,*
700 F. App'x 251 (4th Cir. 2017) ..................................... 37

*Heartbeat Int'l v. James,*
No. E2024007242 (Sup. Ct. Monroe Cnty. 2024) ................. 9

*Herrera v. City of Palmdale,*
918 F.3d 1037 (9th Cir. 2019) .......................................... 28

*Hicks v. Miranda,*
422 U.S. 332 (1975) ...................................................... 24

iv

**Cases**                                                    **Page(s)**

*IMS Health Inc. v. Sorrell,*
  630 F.3d 263 (2d Cir. 2010) ............................................. 38

*In re Rationis Enter., Inc. of Panama,*
  261 F.3d 264 (2d Cir. 2001) ............................................. 44

*Karlin v. IVF Am.,*
  93 N.Y.2d 282 (1999) .................................................... 51

*Kiser v. Kamdar,*
  831 F.3d 784 (6th Cir. 2016) ....................................... 36, 47

*Latino Officers Ass'n v. Safir,*
  170 F.3d 167 (2d Cir. 1999) ............................................. 50

*N.Y. Progress & Prot. PAC v. Walsh,*
  733 F.3d 483 (2d Cir. 2013) ................................... 31, 47, 49

*N.Y. State Ass'n of Realtors, Inc. v. Shaffer,*
  27 F.3d 834 (2d Cir. 1994) ........................................... 32-33

*NAACP, Inc. v. Town of E. Haven,*
  70 F.3d 219 (2d Cir. 1995) ............................................. 48

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
  585 U.S. 755 (2018) ........................................... 38-39, 45-46

*Nken v. Holder,*
  556 U.S. 418 (2009) .................................................... 47

*Nnebe v. Daus,*
  644 F.3d 147 (2d Cir. 2011) ............................................. 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland
  Bank, N.A.,*
  85 N.Y.2d 20 (1995) .................................................... 52

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.,*
  475 U.S. 1 (1986) ...................................................... 38

**Cases**                                                                  **Page(s)**

*People v. Ernst & Young LLP,*
114 A.D.3d 569 (1st Dep't 2014) ..........................................................53

*Riley v. Nat'l Fed. of the Blind of N.C., Inc.,*
487 U.S. 781 (1988)................................................................................39

*Salinger v. Colting,*
607 F.3d 68 (2d Cir. 2010) ...................................................................49

*Spargo v. N.Y. State Comm'n on Jud. Conduct,*
351 F.3d 65 (2d Cir. 2003) .............................................22-23, 25-27

*Sprint Comm'ns, Inc. v. Jacobs,*
571 U.S. 69 (2013)...........................................................................21-23

*Sussman v. Crawford,*
488 F.3d 136 (2d Cir. 2007) ................................................................31

*Thompson v. W. States Med. Ctr.,*
535 U.S. 357 (2002)...............................................................................35

*Town of Southold v. Town of E. Hampton,*
477 F.3d 38 (2d Cir. 2007) ..................................................................44

*United States v. Caronia,*
703 F.3d 149 (2d Cir. 2012) ................................................................37

*United States v. Mendoza,*
464 U.S. 154 (1984)...............................................................................28

*We The Patriots USA, Inc. v. Hochul,*
17 F.4th 266 (2d Cir. 2021)...........................................................31, 49

*Winter v. NRDC, Inc.,*
555 U.S. 7 (2008)...................................................................................50

*Worldwide Moving & Storage, Inc. v. Dist. of Columbia,*
445 F.3d 422 (D.C. Cir. 2006) ............................................................23

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) .......................50

| Cases | Page(s) |
|---|---|

*Younger v. Harris,*
    401 U.S. 37 (1971)...................................................................... 2, 21, 25

*Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio,*
    471 U.S. 626 (1985)............................................................................. 32

**State Statutes**

N.Y. Exec. Law
    § 63(12)........................................................................... 5, 8, 10, 16

N.Y. Gen. Bus. Law
    § 349 ................................................................................ 8, 10, 16
    § 349(b)..................................................................................... 5
    § 350 ............................................................................ 5, 8, 10, 16

## PRELIMINARY STATEMENT

Appellant New York Attorney General Letitia James commenced a civil action in state court to enforce state consumer protection laws against a group of limited-service pregnancy centers. The complaint in that action alleges that public advertisements of what is known as "abortion pill reversal" or "APR" create the false impression that a medication abortion can be reversed with a treatment that is safe, effective, and accepted within the medical profession. The complaint does not name as defendants the appellees here, National Institute for Family and Life Advocates, Gianna's House, and Options Care Center (collectively, the "NIFLA plaintiffs"). Those parties nonetheless sued the Attorney General in federal court, claiming that the Attorney General's state-court action had a chilling effect on their intent to engage in the same advertising in which the defendants in the state-court action currently engage and thus violates of their First Amendment rights. The NIFLA plaintiffs also moved for a preliminary injunction. The United States District Court for the Western District of New York (Sinatra, J.) granted that relief, and this appeal ensued.

The Court should vacate the preliminary injunction. The district court should not have considered the NIFLA plaintiffs' motion for a preliminary injunction on the merits. It should instead have declined to exercise jurisdiction over the underlying complaint and dismissed it in accordance with the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971). Alternatively, the district court abused its discretion by granting a preliminary injunction because the NIFLA plaintiffs failed to make the showing necessary for that relief. Accordingly, this Court should vacate the preliminary injunction and remand with instructions to dismiss the complaint as barred by *Younger* or for further proceedings consistent with its decision.

## ISSUES PRESENTED

1.     Was the underlying complaint subject to dismissal for lack of jurisdiction under the *Younger* abstention doctrine?

2.     Alternatively, did the district court abuse its discretion in granting the underlying preliminary injunction because (a) the NIFLA plaintiffs did not establish that their intended advertising was non-commercial speech or, though commercial speech, substantially true, as necessary to demonstrate a strong likelihood of success on their First

Amendment claim, or (b) the remaining preliminary-injunction factors favored the Attorney General?

## STATEMENT OF THE CASE

### A. Background

Plaintiff National Institute of Family and Life Advocates ("NIFLA") is a not-for-profit membership organization that advances the interests of pregnancy centers that oppose abortion. (Joint Appendix ["JA"] 14.) Plaintiffs Gianna's House and Options Care Center are New York-based limited-service pregnancy centers and NIFLA members. (JA14, 16, 18.) Collectively, these plaintiffs are referred to as the "NIFLA plaintiffs."

Because the underlying action arises from the NIFLA plaintiffs' alleged intent to advertise to the public a medical treatment referred to as "abortion pill reversal" or "APR," this brief provides an overview of APR and of the Attorney General's efforts to ensure that public advertising of APR is not false or misleading.

### 1. Medication abortion and APR

As approved by the United States Food and Drug Administration, medication abortion, colloquially called the "abortion pill" (JA511),

involves a two-drug regimen. (JA512.) The first drug, mifepristone, prevents a pregnancy from continuing by blocking the body's receptors for the hormone progesterone. The second drug, misoprostol, is taken 24 to 48 hours after mifepristone and causes the uterus to expel its contents. (JA512-513.) Medication abortion is generally available only in the first 10 weeks of gestation, and it is the most common method used to abort a pregnancy. (JA500, 512.)

APR proponents contend that pregnant individuals who have taken mifepristone can reverse its effects, and thus continue with a healthy pregnancy, if they do not take misoprostol and instead take supplemental doses of progesterone. (JA501, 513, 665-667.) A family physician in California first recommended this treatment protocol in 2008. (JA513.) The safety and efficacy of the treatment has yet to be tested, let alone scientifically proven, and the two studies principally cited by APR proponents—one published in 2012 and the other in 2018—have widely been criticized as methodologically and ethically flawed. (JA514-515, 771, 796-799.)

APR thus remains "experimental" (JA502-503, 516-517, 781, 815, 817, 822), with the authors of the discredited studies acknowledging that

further research is necessary (JA515). Indeed, the American College of Obstetricians and Gynecologists, along with that organization's counterparts in Canada and the United Kingdom, warn that APR remains scientifically unproven. (JA518-519, 792-794.)

### 2. The Attorney General's Civil Enforcement Action in State Court

The Attorney General is authorized by state law to investigate and, as necessary, to commence litigation to obtain relief from deceptive business practices, false advertising, and fraud. *See* N.Y. Gen. Bus. Law ("GBL") §§ 349(b), 350; N.Y. Exec. Law § 63(12). Exercising this authority, the Attorney General began investigating the public advertising of APR and determined that some limited-service pregnancy centers were advertising APR in a manner that was false or misleading.

The APR advertising strategy used by these centers was developed and coordinated by Heartbeat International, Inc. ("HBI"), an Ohio corporation. (JA501, 504.) HBI advertises APR directly to the public through a website called AbortionPillReversal.com and a staffed hotline that is available around the clock. (JA504-505, 520-524.) Both forms of advertising are designed to connect pregnant individuals with HBI's

international network of over 1,300 medical providers. (JA505, 510, 519-521, 670-672, 771.) HBI represents that it has trained and vetted every provider in its network, and that each is willing and able to provide APR treatment in the provider's geographic area. (JA510, 520, 771.)

Although network providers purportedly offer free consultations, progesterone prescribed as a result of those consultations is not free. On AbortionPillReversal.com, HBI advises individuals to explore insurance options to pay for progesterone and promises to help with the cost if not covered by insurance. (JA521.)

The Attorney General reviewed HBI's advertisements to the public and determined that they were false or misleading because consumers could reasonably understand them to mean that APR is, among other things:

- Capable of "reversing" an abortion, though such reversal is scientifically impossible (JA527);

- a proven and effective way to continue a healthy pregnancy after taking mifepristone, when in reality the two primary studies purporting to establish APR's effectiveness have been widely discredited (JA514-517, 527-530);

- safe, when in reality the only scientifically valid study undertaken of APR was cancelled after subjects suffered severe hemorrhaging (JA517, 530-533); and

- a widely accepted medical treatment, when in reality, leading professional medical groups like the American College of Obstetricians and Gynecologists warn against APR (JA518-519, 533-535).

HBI is not itself a limited-service pregnancy center, but it maintains a directory of such pregnancy centers and provides them with guidance on how to market APR to the public. (JA504-505, 508-510, 521-522.) HBI lists 196 locations for New York-based limited-service pregnancy centers in its worldwide directory. (JA509.) Not all of those pregnancy centers advertise APR directly to consumers, however. (JA772-773.) Some, for example, limit their statements promoting APR to donors or other pregnancy centers. (JA772-774.)

The Attorney General investigated the New York-based pregnancy centers in HBI's directory and identified several that used false or misleading statements to advertise APR directly to consumers. These pregnancy centers included with their false or misleading statements

referrals to specific medical providers in HBI's network by providing links to AbortionPillReversal.com or HBI's hotline, but did not disclose that HBI, a wholly independent entity, maintained that network. Two of the pregnancy centers additionally advertised their own on-site APR treatment. (JA537-540, 677, 681, 773.) And several others made misleading statements in the advertising of services available through their own affiliated medical providers. (JA541, 681.) None of the NIFLA plaintiffs was among the pregnancy centers that the Attorney General identified as using false or misleading statements to advertise APR directly to consumers. (JA774-778.)

In May 2024, the Attorney General commenced a civil enforcement action in state court against HBI and eleven New York-based pregnancy centers (collectively, the "HBI defendants"). (JA499, 504.) Describing specific statements made in APR advertisements that were alleged to be false or misleading (*see* JA524-556), the Attorney General sought injunctive relief and civil penalties against these entities for engaging in deceptive business practices in violation of N.Y. GBL § 349, false advertising in violation of N.Y. GBL § 350, and repeated and persistent illegality and fraud in violation of N.Y. Exec. Law § 63(12). (JA556-565.)

That state enforcement action has since been consolidated with a preemptive action commenced in a different county by the HBI defendants, where further proceedings have been stayed pending an appeal to an intermediate appellate court of a ruling placing venue of the consolidated action in Monroe County. *See Heartbeat Int'l v. James*, No. E2024007242 (Sup. Ct. Monroe Cnty. 2024), *appeal pending*, 4th Dep't No. CA 24-00921.

## B. Proceedings Below

Weeks after the Attorney General commenced that state-court action, the NIFLA plaintiffs commenced the underlying federal suit against the Attorney General on their own behalf and on behalf of NIFLA's members. (JA10, 15-16, 75.) They alleged that they did not prescribe progesterone to patients directly, but rather referred patients to physicians who were qualified to prescribe that medication. (JA15, 17-18.) They alleged that they did not receive payment for the referrals they made, and that patients who obtained prescriptions for progesterone through those referrals did not need to pay for them. (JA15-18, 20-21, 36, 62.)

The NIFLA plaintiffs alleged that the Attorney General's civil enforcement action prevented them from realizing their intent to advertise APR in the same manner as the HBI defendants do, and thus violated their First Amendment right to free speech. (JA12, 15, 17, 19, 36-40, 42-47, 50, 61-67.) They additionally asserted that the threat of a civil enforcement action against them violated their First Amendment right to the free exercise of religion, their equal protection right to be free of selective enforcement, and their due process right to avoid enforcement of unduly vague statutes. (JA68-74.) To protect these rights, they sought both a declaratory judgment and a permanent injunction barring the Attorney General from enforcing N.Y. GBL §§ 349 and 350 or N.Y. Exec. Law § 63(12) against them for their intended advertising of APR. (JA75.)

The NIFLA plaintiffs simultaneously moved for a preliminary injunction that mirrored the permanent injunction they sought in the complaint. (JA587, 599, 622.) In support of that motion, they submitted a chart describing similarities between the statements they were currently making about APR and the statements the Attorney General identified as false or misleading in the state-court action against the HBI defendants. (JA933-944.) And they submitted declarations from staff

10

confirming their intent to advertise APR directly to consumers, just as the HBI defendants currently do. (JA970-971, 976-977.)

To support the contention that the HBI defendants' advertising—and thus their own intended advertising—of APR is not false or misleading, the NIFLA plaintiffs submitted a declaration from Dr. Christina Francis, a physician who on many occasions has administered progesterone according to the APR protocol. (*See* JA625-627.) Purporting to challenge specific paragraphs in the Attorney General's complaint against the HBI defendants (JA626-627, 638-639), Dr. Francis both defended the scientific validity of the two studies on which the HBI defendants relied to market APR as safe and effective and also volunteered additional studies, conducted on laboratory rats, that she claimed supported the safety and efficacy of APR. (JA631-639.) According to Dr. Francis, using historical control groups to study APR is "preferable" to conducting randomized controlled trials involving pregnant individuals. (JA633.) While acknowledging that one such controlled trial that had been undertaken had been halted when some subjects experienced severe hemorrhaging, she opined that the APR protocol should not be blamed for those complications. (JA641-642.)

Dr. Francis further accused the American College of Obstetricians and Gynecologists of harboring a pro-abortion agenda that influenced its public statements. (JA642.)

In opposition, the Attorney General argued that the district court should not consider the motion for a preliminary injunction on the merits but should instead dismiss the underlying complaint (JA742 n.4), either for lack of standing (JA744-752) or under the *Younger* abstention doctrine (JA735-739). The Attorney General argued in the alternative that a preliminary injunction was unwarranted. The Attorney General offered the declaration of Dr. Courtney Schreiber, who opined, unlike Dr. Francis, that APR was dubious, even as a theoretical matter (JA813-815); the studies that supposedly tested this theory were mired in flaws (JA791-813); medical treatments administered to laboratory rats do not automatically produce the same results in humans (JA790-791, 808-810); studies that have been subjected to scientific rigor have cast doubt on the efficacy of progesterone to prevent miscarriage (JA795-796); there were reasons to believe that using progesterone according to the APR protocol could be dangerous, including the fact that the one study aimed at testing APR in pregnant individuals needed to be halted for safety reasons

(JA803-805, 817-818); and the American College of Obstetricians and Gynecologists bases its statements on science, not a political agenda (JA793-794).

The district court convened a hearing on the motion. (JA978.) Neither party called witnesses to testify; instead, the parties relied on their written submissions and the hearing was limited to oral argument by counsel. (JA978-1024.)

## C.    The District Court's Preliminary Injunction Order

The district court granted the NIFLA plaintiffs' motion for a preliminary injunction. As to threshold matters, the district court declined to dismiss the complaint on standing grounds, concluding that the NIFLA plaintiffs' stated intention to advertise APR directly to consumers, exactly as the HBI defendants now do, was sufficient to establish a credible and imminent threat to their rights. (Special Appendix ["SPA"] 12-13.)[1] The district court also declined to abstain

---

[1] Relying on *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011), the district court ruled that NIFLA itself was precluded from seeking relief on behalf of its members. (SPA9 n.7.) The NIFLA plaintiffs' cross-appealed to challenge that ruling. (JA1032-1033.)

13

under *Younger*. The district court recognized that *Younger* abstention barred federal courts from interfering with civil enforcement actions in state court. (SPA16.) The district court also recognized that *Younger* abstention can apply to bar claims by nonparties to a state-court action. The court nonetheless found that the NIFLA plaintiffs' interests were not so inextricably intertwined with those of the HBI defendants that the resolution of the NIFLA plaintiffs' claims in federal court would inevitably interfere with the state-court action. (SPA16-17.) The court reasoned that those claims were not "entirely derivative" of the HBI defendants' rights because the NIFLA plaintiffs had their own free-speech rights and suffered individualized injuries. (SPA17-18.)

Turning to the merits of the request for a preliminary injunction, the district court concluded that the NIFLA plaintiffs were likely to succeed on their First Amendment free-speech claim. And having found a likelihood of success on that claim, the district court did not evaluate the likelihood of success on any of the other claims before it. (SPA22 n.10.)

More specifically, the district court concluded that the NIFLA plaintiffs' intended advertising of APR was entitled to the full protection

of the First Amendment because it was not commercial speech. (SPA26.) Even though the court recognized that the NIFLA plaintiffs' intended statements about APR could be construed as advertisements for a particular form of medical treatment, the court found dispositive the fact that the NIFLA plaintiffs did not intend to advertise APR for economic gain, but rather out of a sense of religious or moral obligation. (SPA27.) And stressing that the NIFLA plaintiffs would not receive any payments for referrals to medical providers to prescribe progesterone supplements, the court reasoned that the speech at issue was analogous to that of "sidewalk counselors" (SPA27-28). Remarking that "[n]othing could be fundamentally less commercial than this speech about how a woman might save her pregnancy," the court refused to characterize such advertising as merely proposing a commercial transaction. (SPA28.)

Having concluded that the NIFLA plaintiffs' intended advertising of APR was noncommercial speech, the district court subjected any action by the Attorney General to restrict that speech to strict scrutiny and concluded that such action would be unconstitutional, regardless of whether the advertisements were false or misleading. (SPA24, 28-30.) In a footnote, however, the court remarked without further analysis that the

15

outcome would not change if the NIFLA plaintiffs' intended advertising of APR were commercial speech, because any action by the Attorney General to restrict that speech could not survive intermediate scrutiny, either. (SPA31 n.15.)

With respect to the remaining preliminary-injunction factors, the district court concluded that the NIFLA plaintiffs suffered irreparable harm because the Attorney General's state-court action against the HBI defendants produced an immediate, ongoing chilling effect on their constitutionally protected speech, namely their intended advertising of APR. (SPA32-33.) The court concluded further that an injunction would serve the public interest by promoting the full dissemination of information, both in general and to the benefit of individuals who had begun a medication abortion and experienced second thoughts. The court further highlighted the lack of evidence that the speech at issue had ever harmed anyone. (SPA33-34.)

The district court broadly enjoined the Attorney General from taking *any* action to enforce N.Y. GBL § 349, N.Y. GBL § 350, and N.Y. Exec. Law § 63(12) against the NIFLA plaintiffs based on their use of the term "abortion pill reversal," their statements that this medical

16

treatment is safe and effective, or their references to AbortionPillReversal.com or the APR hotline. (SPA35-36.)

The Attorney General appealed. (JA1029.) The district court later consolidated the underlying action with another action brought by different parties raising similar issues and entered an identical preliminary injunction as to those parties. (JA1025-1027, 1030-1031.)[2]

## STANDARD OF REVIEW

The district court's *Younger* ruling raises a question of law that this Court reviews de novo. *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197-98 (2d Cir. 2002).

On appeal from an order granting injunctive relief, this Court reviews the district court's legal holdings de novo and its ultimate decision for abuse of discretion. *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,* 764 F.3d 210, 214 (2d Cir. 2014).

---

[2] Because a decision in this appeal favorable to the Attorney General would provide persuasive grounds to revisit the parallel injunction awarded as to those parties, the Attorney General did not separately appeal from that injunction.

## SUMMARY OF ARGUMENT

At the threshold, the district court should not have considered the NIFLA plaintiffs' motion for a preliminary injunction on the merits, but should instead have dismissed their underlying complaint as barred by the *Younger* abstention doctrine. The NIFLA plaintiffs commenced their federal action shortly after the Attorney General commenced a civil enforcement action against the HBI defendants in state court. That state-court action unquestionably implicates important state interests.

*Younger* abstention was not rendered inapplicable by the NIFLA plaintiffs' status as nonparties to the state-court action. To the contrary, because the NIFLA plaintiffs depend on the state-court action to establish their standing to sue in federal court—indeed, their complaint asks the district court to decide the merits of that action—the NIFLA plaintiffs' claims are wholly derivative of the HBI defendants' rights. And the NIFLA plaintiffs should not be permitted to interfere with the state-court action by obtaining declaratory and injunctive relief that the HBI defendants might later attempt to use as a ground to dismiss the state-court action. That is exactly the kind of gamesmanship that *Younger* seeks to avoid.

18

Even if the district court properly declined to abstain and therefore had jurisdiction over the NIFLA plaintiffs' complaint, the court abused its discretion in granting a preliminary injunction. First, and contrary to the district court's conclusion, the NIFLA plaintiffs did not demonstrate a likelihood of success on the merits of their free-speech claim. Commercial speech that is false or misleading is not protected by the First Amendment, and the NIFLA plaintiffs' intended advertising of APR is quintessentially commercial speech: They have stated their intent to advertise to consumers a treatment requiring the purchase of prescription medication. Their asserted lack of economic motivation does not by itself render their speech noncommercial. And the fact that their intended speech may touch upon an issue of public concern does not transform advertising into protected advocacy.

Moreover, the NIFLA plaintiffs failed to carry their burden to show that their commercial speech is not false or misleading, and thus entitled to some degree of First Amendment protection. While the NIFLA plaintiffs submitted an affidavit from an expert purporting to support the truth of their intended commercial speech, the Attorney General controverted that evidence with a declaration from an expert of her own,

creating a factual dispute on an essential issue that could not be resolved on the papers. And while the NIFLA plaintiffs could have called witnesses at the preliminary-injunction hearing to address that issue, they declined to do so. They therefore failed to carry their burden of establishing entitlement to a preliminary injunction with a sufficient evidentiary showing.

Second, the district court's analysis of the remaining preliminary-injunction factors was similarly flawed. The court premised its finding of irreparable harm on the likelihood that the NIFLA plaintiffs would establish a free-speech violation as a consequence of the allegedly chilling effect of the Attorney General's state-court action on their intended speech. The First Amendment does not protect that intended speech, however. And the NIFLA plaintiffs did not—and could not—rely on any other form of irreparable harm because the Attorney General has never threatened them with legal action. The court's finding that an injunction was in the public interest was similarly based on its incorrect assessment of the merits and invites similarly situated pregnancy centers to engage in advertising that is false or misleading. Given that laws against such advertisements have routinely been recognized as serving the public interest, this was error.

20

This Court should vacate the district court's preliminary injunction and remand with instructions either to dismiss the complaint under *Younger* or for further proceedings consistent with the Court's decision.

## ARGUMENT

## POINT I

### THE NIFLA PLAINTIFFS' COMPLAINT WAS SUBJECT TO DISMISSAL UNDER THE *YOUNGER* ABSTENTION DOCTRINE

The district court should not have considered the preliminary-injunction motion on the merits, but should instead have dismissed the underlying complaint in accordance with the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971).

Ordinarily, federal courts must resolve legal disputes within their jurisdiction, regardless of whether a case involving the same subject matter is pending in a state court. *Sprint Comm'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). *Younger* established a narrow exception to this rule grounded in important notions of federalism and comity and a desire to avoid duplicative proceedings. *Younger,* 401 U.S. at 44. To encourage courts to abstain sparingly, the Supreme Court has limited *Younger*'s reach to three categories of state-court cases: (1) criminal prosecutions,

(2) civil enforcement actions, and (3) civil proceedings in state court that implicate a state's interest in enforcing the judgments of its courts. *Sprint*, 571 U.S. at 78.

If a state-court case falls into one of these categories, then three additional factors become relevant. *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015). These factors are whether the state-court case (1) remains pending, (2) implicates an important state interest, and (3) affords the plaintiffs an adequate opportunity for judicial review of their federal claims. *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

*Younger* abstention is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on a court's exercise of jurisdiction grounded in equitable considerations of comity. *Spargo,* 351 F.3d at 74. Nevertheless, *Younger* abstention presents a threshold legal issue that a court may address before reaching other threshold issues, like Article III standing. *Id.* And when the requirements for *Younger* abstention are satisfied, dismissal or a stay of claims is mandatory, unless the plaintiff can make a showing of bad faith,

harassment, or another unusual circumstance that calls for equitable relief. *Id.* Dismissal is mandatory even where, as here, the applicability of *Younger* is developed in the course of resolving the plaintiff's motion for a preliminary injunction, rather than a defendant's motion to dismiss. *See Diamond "D" Constr. Corp.*, 282 F.3d at 197-98, 202.

*Younger* abstention was mandatory in this case. There can be no dispute that the parallel state-court case qualifies as a civil enforcement action. Consistent with the Supreme Court's description of civil enforcement actions in *Sprint,* 571 U.S. at 79-80, the parallel state-court case here is the product of an investigation that culminated with a state-initiated complaint brought to sanction parties for wrongful acts under state law. Indeed, courts have had little difficulty concluding that complaints by Attorneys General alleging violations of state consumer protection laws constitute civil enforcement actions for *Younger* abstention purposes. *See, e.g., Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 736-38 (9th Cir. 2020); *Worldwide Moving & Storage, Inc. v. Dist. of Columbia*, 445 F.3d 422, 424, 426 (D.C. Cir. 2006); *Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874, 879-80 (8th Cir. 2002).

The state-court action also satisfies the three additional factors that thereafter come into play. First, the state-court action remains pending. As noted *supra*, at 9, the Attorney General's civil enforcement action against the HBI defendants remains ongoing before a state supreme court where proceedings are currently stayed pending an interlocutory appeal to a state intermediate appellate court. Second, the civil enforcement action implicates an important state interest. As the Supreme Court has recognized, the enforcement of consumer protection laws is of the utmost importance to the States. *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980); *accord Cedar Rapids Cellular Telephone*, 280 F.3d at 880.

And third, even though the NIFLA plaintiffs are not parties to the state-court action, that action affords them an adequate opportunity for judicial review of their federal claims, notwithstanding the district court's apparent conclusion to the contrary (SPA16-18). The Supreme Court has made clear that *Younger* may apply even when the federal-court plaintiff is not also a party in the state-court case if its interests are sufficiently intertwined with those of a party in that state-court case. *See Hicks v. Miranda*, 422 U.S. 332, 348-49 (1975). And this Court has

24

explained that federal courts should abstain when the interests of the federal-court plaintiff and the state-court party are "so inextricably intertwined that direct interference with the state court proceeding is inevitable." *Spargo*, 351 F.3d at 82.

The facts in *Spargo* are instructive. The federal-court plaintiffs in *Spargo* included political supporters of a local judge who was the subject of a judicial misconduct proceeding brought in state court. 351 F.3d at 67. Claiming that the state-court proceeding infringed on their First Amendment right to publicly support the judge, the plaintiffs asked the district court to declare the judicial-conduct rules at issue uncon-stitutional and to enjoin their enforcement, which the district court did. *Id.* at 70. This Court reversed and held that the district court should have found the plaintiffs' claims barred by the *Younger* abstention doctrine. *Id.* at 71, 85-86.[3] While recognizing that courts should find nonparties to be inextricably intertwined only in narrow circumstances, *Spargo* held that the case before it presented such a circumstance, for two reasons.

---

[3] The *Spargo* Court separately addressed the constitutional claim raised by Spargo himself, which it found was also barred by *Younger* abstention, but for different reasons. 351 F.3d at 78-81.

First, the plaintiffs' free-speech claims were "entirely derivative" of the judge's own free-speech rights, which the judge could assert in the state-court proceeding. *Id.* at 83-84. And second, by asking the district court to enjoin the state-court proceeding, the plaintiffs were seeking to interfere with that proceeding, and there was no reason to believe that the judge could not adequately represent the plaintiffs' interests in that proceeding by asserting his own First Amendment rights. *Id.* at 85.

For the same reasons, the NIFLA plaintiffs' interests are inextricably intertwined with those of the HBI defendants in the state-court action. All of the NIFLA plaintiffs' federal claims—not just their free-speech claims—derive from the HBI defendants' rights at issue in the state-court action. Indeed, the NIFLA plaintiffs' very standing to bring this federal pre-enforcement action depends entirely on the Attorney General's civil enforcement action against the HBI defendants, because the NIFLA plaintiffs allege that the existence of that state-court action serves to chill speech in which they now wish to engage. *Spargo* implicated the same kind of relationship between the federal- and state-court parties, with the plaintiffs there alleging that the state-court disciplinary proceeding against the local judge, who was the sole

defendant in that proceeding, chilled their intended political speech to support the judge. 351 F.3d at 83.

The NIFLA plaintiffs have thus far been transparent in this litigation about their desire to have the federal district court decide the merits of the state-court action. They devoted a substantial portion of their complaint to the similarities between themselves and the HBI defendants (JA36-48), and followed up with a nine-page chart to reinforce how indistinguishable the two groups are. (JA933-944.) They submitted an expert affidavit to refute allegations made in the Attorney General's complaint against the HBI defendants. (*See* JA626-627, 638-639.) And while the Attorney General never threatened the NIFLA plaintiffs with civil enforcement, due to the different nature of their statements about APR at the time of her investigation, they premise all of their claims here on the allegation that they now would engage in advertising identical to that in which the HBI defendants currently engage, but for fear that the Attorney General would seek to enforce state law against them as well. Their claims thus necessarily require the district court in this case to decide whether the Attorney General acted unlawfully with respect to the HBI defendants in the state-court action. Where, as here, a federal action

"seeks to establish the lack of merit of pending state litigation," *Younger* abstention is appropriate even if the plaintiffs are nonparties to the state-court case. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1232 (10th Cir. 2004); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1047 (9th Cir. 2019) (same, where nonparty plaintiff asserted rights of family members who were parties to state-court action).

Moreover, an award of relief here would interfere with the HBI action. Although the NIFLA plaintiffs do not expressly ask the district court to enjoin the state-court action, *Younger* abstention does not depend on such a request for relief. *See Gilbertson v. Albright*, 381 F.3d 965, 982-83 (9th Cir. 2004) (en banc). If the NIFLA plaintiffs obtained permanent injunctive relief here, that relief could preclude the Attorney General from proceeding in the state-court action, depending on the injunction's terms. And even without a broadly worded injunction, the HBI defendants could attempt to use any judgment against the Attorney General in this action as a ground to dismiss or otherwise obtain an advantage in the state-court action. This does not mean any such attempt would succeed. *See United States v. Mendoza*, 464 U.S. 154, 159-60 (1984) (holding that "nonmutual" collateral estoppel generally cannot

28

be asserted against governments). Still, this Court need not speculate on the outcome of a hypothetical preclusion argument to conclude that such an argument is itself a form of interference contemplated by the *Younger* abstention doctrine.

The HBI defendants' ability to vindicate their own interests in state court is adequate to protect the NIFLA plaintiffs' derivative interests for *Younger* purposes. Indeed, the HBI defendants assert as defenses to the state-court action against them free-speech, free-exercise, and selective-enforcement claims, just as the NIFLA plaintiffs assert here. (*See* JA692-694.) And if the HBI defendants persuade the state court that their advertisement of APR is constitutionally protected speech—either as noncommercial speech or as commercial speech that it is true—then there will be no threatened civil enforcement action for the NIFLA plaintiffs to fear by engaging in the same advertising of APR. Despite the district court's contrary conclusion, the NIFLA plaintiffs' claims truly "rose or fell with those of the state court litigant." (SPA18.)

Finally, the NIFLA plaintiffs have never claimed that they are entitled to an exception to *Younger* abstention based on bad faith, harassment, or another unusual circumstance that calls for equitable

relief. Nor could they do so. The Attorney General provided a detailed description of how her investigatory team pored through the statements of numerous pregnancy centers located across New York and carefully selected as defendants only those that made false or misleading statements in advertisements about APR to the public. (JA772-773.) That description belies any claim by the NIFLA plaintiffs that the Attorney General's enforcement effort was so bereft of a legitimate purpose that it could only have resulted from bad faith or harassment. *See Diamond "D" Constr. Corp.*, 282 F.3d at 200. Because *Younger* applies to all of the NIFLA plaintiffs' claims, this Court should vacate the preliminary injunction awarded below and remand to the district court with instructions to dismiss the complaint in its entirety.

## POINT II

### THE NIFLA PLAINTIFFS FAILED TO DEMONSTRATE THEIR ENTITLEMENT TO A PRELIMINARY INJUNCTION

Even if the district court properly considered the preliminary-injunction on the merits, the court abused its discretion by granting the injunction. A movant seeking a preliminary injunction must demonstrate that(1) it is likely to succeed on the merits, (2) it will suffer irreparable

harm absent an injunction, (3) an injunction is in the public interest, and (4) the equities weigh in favor of an injunction. *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013). The NIFLA plaintiffs failed to establish any of these factors.

## A. The NIFLA Plaintiffs Are Unlikely To Succeed on Their First Amendment Claim.

The district court erred by granting a preliminary injunction based on a likelihood that the NIFLA plaintiffs would succeed on their First Amendment free-speech claim.

While the NIFLA plaintiffs tried to shift to the Attorney General the burden of establishing a likelihood of success (JA921, 926), as movants, they bore that burden. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021). And because they sought to enjoin government action that, if taken against them, would be taken in the public interest, they needed to show a "clear" or "substantial" likelihood of success. *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quotation marks omitted).

The degree of First Amendment protection afforded the NIFLA plaintiffs' intended speech turns on whether or not that speech is

commercial speech. The First Amendment bars the government from restricting speech on the basis of content, except in the most extraordinary of circumstances, like libel, or fighting words. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 & n.7 (1983). Commercial speech, however, receives less First Amendment protection. *Id.* at 64-65; *N.Y. State Ass'n of Realtors, Inc. v. Shaffer*, 27 F.3d 834, 840 (2d Cir. 1994). And commercial speech that is false or misleading receives no First Amendment protection at all. *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985). While the government may restrict commercial speech that is not false or misleading, it may do so only in service of a substantial government interest, and only through means that directly advance that interest. *Id; see also Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 563 (establishing these principles).

Thus, to demonstrate a likelihood of success on the merits of their free-speech claim, the NIFLA plaintiffs were required to show that either (1) their intended advertising of APR *is not* commercial speech, or (2) their intended advertising of APR, even if commercial speech, was neither false nor misleading. They made neither showing, let alone the strong showing required to enjoin government action.

### 1. The NIFLA plaintiffs' intended advertising of APR is commercial speech.

"'The core notion' of commercial speech is that of speech which does 'no more than propose a commercial transaction.'" *N.Y. State Ass'n of Realtors*, 27 F.3d 834 at 840 (quoting *Bolger,* 463 U.S. at 66). However, even speech that also contains informational elements may be treated as commercial speech for First Amendment purposes. *See Bolger*, 463 U.S. at 66-67. When determining whether speech is, on the whole, commercial speech, courts should consider whether (1) the speech is about a specific product, (2) the speech is an advertisement, and (3) the speaker has an economic motive. *Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002). While no single consideration is dispositive, the presence of all three strongly supports a finding that the speech is commercial. *Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.*, 134 F.3d 87, 97 (2d Cir. 1998).

The NIFLA plaintiffs specifically allege that they intend to engage in speech about APR that is essentially identical in substance and context to the speech about APR at issue in the state-court action against the HBI defendants. That speech is commercial.

To begin, that speech concerns a specific product: APR, which is a medical treatment protocol in which a pregnant individual foregoes the

misoprostol prescribed for a medication abortion and instead takes repeated doses of prescribed progesterone.[4] (*See* JA631-632.) Regardless of whether the patient receiving that prescribed progesterone bears its full cost, *someone* must bear that cost, be it insurance, the medical provider, or a charity. (JA521.) Indeed, the NIFLA plaintiffs admit that "pro-life pregnancy centers"—as some of them are—offer services in the stream of commerce, going so far as to volunteer an estimated dollar value for those services nationwide. (JA20.)

The speech at issue here is also advertising. The NIFLA plaintiffs affirmatively allege that they intend to "advertise" APR just as the HBI defendants currently do. (JA61; *see also* JA15, 39, 622.) Their intended speech would qualify as advertising even without that allegation, however. As the Fourth Circuit has explained, in the commercial speech analysis, "context matters," including the viewpoint of the recipient of the speech. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 286 (4th Cir. 2013) (en banc). Consumers

---

[4] The Attorney General does not concede that APR is an *accepted* medical treatment. The gravamen of the state-court action is that APR is not accepted.

receiving the NIFLA plaintiffs' intended statements about APR will likely be led to believe that they may be able to continue with a healthy pregnancy, even if they already have taken the first drug prescribed for a medication abortion (mifepristone), by foregoing the second drug prescribed for that purpose (misoprostol) and taking repeated doses of prescribed progesterone. In addition, because the NIFLA plaintiffs want to include links to the APR hotline and AbortionPillReversal.com, consumers will likely be led to believe that the NIFLA plaintiffs will arrange for them to receive that progesterone because their intended statements invite consumers to access a network of physicians who are willing and able to prescribe progesterone for APR purposes. And because the intended advertisements will be silent about the cost of such prescription medication, consumers will likely expect that they will need to get prescriptions filled at pharmacies, either through prescription coverage or at their own cost, as is ordinarily the case.

It has long been settled that advertisements of prescription medication and other medical services constitute commercial speech. *See, e.g.*, *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 366 (2002) (advertisement of compounded drugs); *Bolger*, 463 U.S. at 63 (advertise-

ment of contraceptives); *Kiser v. Kamdar*, 831 F.3d 784, 787-89 (6th Cir. 2016) (advertisement of dentist as a specialist); *Am. Academy of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004) (physicians' advertisements of their services). The advertisement of a medical treatment involving a prescription medication to reverse a medication abortion should be treated no differently.

The district court disagreed, reasoning that the NIFLA plaintiffs sought to speak out of a sense of religious or moral duty, rather than economic benefit. (SPA27-28.) This reasoning renders a speaker's economic motivation dispositive to the commercial-speech inquiry, contrary to well-settled law that no one consideration is dispositive. *Bolger*, 463 U.S. at 67 n.14; *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017). In fact, in a case involving pregnancy centers similarly situated to the NIFLA plaintiffs, the Fourth Circuit, sitting en banc, rejected the premise that the speaker's subjective motivation was dispositive to the commercial-speech inquiry. *See Greater Baltimore Ctr. for Pregnancy Concerns*, 721 F.3d at 284-87.

*Greater Baltimore* involved a challenge by a group of pregnancy centers to a city ordinance requiring them to post disclaimers relating to

36

the services they offered and did not offer. *Id.* at 271. The district court had invalidated the ordinance on First Amendment grounds, reasoning that the speech was noncommercial because the plaintiffs were motivated by their belief that human life must be protected from the moment of conception. *Id.* at 278. The Fourth Circuit reversed and remanded, holding that "the potential commercial nature of speech does not hinge solely on whether the [plaintiffs have] an economic motive," but rather on whether the speech as a whole has a commercial context. *Id.* at 285-86. Relying on that decision, the Ninth Circuit has since held that commercial speech is not limited "to circumstances where clients pay for services." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1273 (9th Cir. 2017); *see also Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 260-61 (4th Cir. 2017) (nonprofit status of organization did not by itself render its speech noncommercial).

It is true, as the district court highlighted (SPA27), that this Court has described commercial speech as "solely related to the economic interests of the speaker and its audience." *United States v. Caronia*, 703 F.3d 149, 163 (2d Cir. 2012). On the other hand, the speech at issue here "*proposes* a commercial transaction, which is what defines

commercial speech." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989) (emphasis in original). By focusing solely on the NIFLA plaintiffs' motive for advertising APR to the public, the district court overlooked that, regardless of motive, their intended advertisements will propose a commercial transaction just as does any speech that advertises "the sale of prescription drugs to patients," *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 274 (2d Cir. 2010), *aff'd* 564 U.S. 552 (2011).

If, however, the speaker's motive were the decisive consideration, a progesterone manufacturer and the NIFLA plaintiffs could publish identical advertisements, but the Attorney General could enforce state consumer protection laws only against the manufacturer. Any such outcome would violate the principle that the "identity of the speaker is not decisive in determining whether speech is protected." *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986). Indeed, there is a strong argument that economic motivation is the least significant of the three commercial-speech considerations, given the Supreme Court's general admonition that courts should be "deeply skeptical of laws that "distinguis[h] among different speakers, allowing speech by some but not others." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755,

777-78 (2018). The district court thus erred by focusing solely on the NIFLA plaintiffs' alleged reasons for speaking.

The district court also mischaracterized the NIFLA plaintiffs' intended advertising as "speech about how a woman might save her pregnancy." (SPA28.) There may be instances in which a commercial message constitutes only part of an otherwise noncommercial message and receives the First Amendment's full protections. An example would be a charitable solicitation in which the request for a donation is inextricably intertwined with information about the charity's mission and work. *See Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988); *see also Gaudiya Vaishnava Soc'y v. City & Cnty. of San Francisco*, 952 F.2d 1059, 1063-65 (9th Cir. 1990) (noncommercial message placed on merchandise held for sale). Speech that is primarily commercial but happens to "touch on other subjects" is still commercial speech. *Fox*, 492 U.S. at 474.

If the NIFLA plaintiffs simply wish to communicate their religious objections to abortion and their consequential support of a treatment like APR that might avoid an abortion (JA905), they are free to do so. That was never the speech the Attorney General sought to restrict. Rather, she

was concerned about false or misleading statements made in adver-
tisements intended to induce consumers to purchase prescription proges-
terone for an unproven and potentially dangerous medical treatment.
(JA773.) Some of the HBI defendants advertised their ability to prescribe
progesterone directly to consumers. (*See* JA537-540.) Others advertised
their ability to connect interested patients with HBI-vetted providers
who were willing and able to prescribe progesterone. None of the
advertisements, examples of which are available in the record (JA523,
553), purported to invoke a religious justification for APR or take a
position on public debate.

Even if an advertisement of APR might imply support for
alternatives to abortion, advertising does not lose its commercial charac-
ter merely when it "link[s] a product to a current debate." *Bad Frog
Brewery*, 134 F.3d at 97. Thus, the Supreme Court in *Bolger* held that
advertisements for contraception constituted commercial speech, even
though the advertisements discussed important public issues like family
planning. 463 U.S. at 67-68. Indeed, in a decision that served as a
precursor to the modern jurisprudential approach to commercial speech,
the Supreme Court assumed that an advertisement about the availability

40

of abortions was commercial speech, before rejecting a categorical exception to the First Amendment for such speech. *Bigelow v. Virginia*, 421 U.S. 809, 819-23 (1975). Despite any anti-abortion message the NIFLA plaintiffs might seek to convey, they "should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues" in their APR advertisements. *Bolger*, 463 U.S. at 68.

In sum, the NIFLA plaintiffs' intended advertising of APR is no more a form of protected advocacy than any other advertising of specific treatments for medical conditions that direct consumers how to obtain those treatments. That intended advertising is therefore commercial speech, which can thus be restricted—indeed banned—if it is false or misleading.

### 2. The NIFLA plaintiffs failed to demonstrate that their intended advertising was neither false nor misleading.

Because the speech in which the NIFLA plaintiffs allege they wish to engage is commercial speech, the government can prohibit that speech if it is false or misleading. As explained *supra*, at 32, commercial speech that is false or misleading is not entitled to First Amendment protection.

41

The commercial speech at issue here is false or misleading because it falsely represents or misleadingly suggests that APR can reverse an abortion, is a safe and effective way of continuing a healthy pregnancy after taking mifepristone, and is a generally accepted medical treatment. As the Attorney General alleges in her state-court complaint against the HBI defendants, none of these statements is accurate: As a matter of science, an abortion cannot be reversed (JA527); the two studies principally cited to establish APR as an effective and safe medical treatment have been widely discredited (JA514-517, 526-530); the only scientifically valid study undertaken of APR had to be halted after several subjects suffered severe hemorrhaging (JA517, 530-533); and leading professional medical groups like the American College of Obstetricians and Gynecologists warn against APR (JA518-519, 533-535).

To be sure, to prevail in a civil enforcement action based on the commercial speech at issue, the Attorney General would have to prove those allegations. Here, however, the NIFLA plaintiffs assert a claim against the Attorney General to protect their ability to engage in the commercial speech at issue, and they obtained a preliminary injunction that does just that. For purposes of obtaining that relief, they bore the

burden to prove that their intended commercial speech would not be false or misleading. They failed to carry that burden. The district court appears to have found otherwise (SPA31 n.15), but it was mistaken.

The NIFLA plaintiffs sought to establish that their intended commercial speech was not false or misleading with an affidavit from Dr. Francis, a physician who opined that the theory behind APR makes sense and that some studies tended to support that theory. (JA631-639.) Such an opinion might justify a physician's decision to prescribe progesterone as part of the APR protocol, as Dr. Francis does. (JA625-627.) But the Attorney General sought only to enjoin consumer advertising that creates the false impression that APR is a safe, effective, and generally accepted medical treatment—not to enjoin medical providers from offering that treatment. (JA772.) Dr. Francis does not explain how a smattering of experiments with laboratory rats and observational studies involving humans is sufficient for pregnancy centers to make representations, without qualification, that would lead a reasonable consumer to believe that APR is a safe, effective, and generally accepted medical treatment. And Dr. Francis cannot affirmatively establish APR's acceptance in the medical profession by conjecturing that the American

College of Gynecologists and Obstetricians harbors a pro-abortion agenda that influences its public positions. (JA642.) Dr. Francis' opinion was thus insufficient to raise even an inference that the commercial speech at issue is true and accurate, rather than false and misleading.

Even if Dr. Francis' opinion were sufficient to raise such an inference, the Attorney General refuted that opinion with a declaration from Dr. Schreiber who opined that, given the current state of the science, APR is an experimental and possibly dangerous treatment. (JA795-796, 815-819.) Dr. Schreiber also highlighted multiple flaws in Dr. Francis' opinion. (JA697-698, 804-822.) And there is no record evidence undermining the reliability of Dr. Schreiber's conflicting expert opinion. The conflicting opinions then, at the very least, raised a factual dispute as to whether the commercial speech at issue here is false and misleading. *Cf. Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 52 (2d Cir. 2007) (conflicting expert reports precluded resolution of issue at summary judgment stage).

On a motion for a preliminary injunction, disputes over "essential facts" that are raised in the papers should be resolved at an evidentiary hearing, where findings of fact can be made. *In re Rationis Enter., Inc. of*

44

*Panama*, 261 F.3d 264, 269 (2d Cir. 2001); *see also Davis v. N.Y. City Hous. Auth.*, 166 F.3d 432, 437-38 (2d Cir. 1999) (describing oral testimony as preferred means of resolving disputes raised in conflicting affidavits). And the question whether the commercial speech at issue is false or misleading is essential to the NIFLA plaintiffs' free-speech claim. Indeed, their success on that claim depends on their ability to establish this fact—if their intended advertising of APR is indeed false or misleading, then their speech receives no protection, and their claim necessarily fails. The district court thus could not resolve this essential factual dispute on the basis of the conflicting written opinions.

To the extent the district court concluded that the conflicting opinions suggested there was a debate within the medical profession that it should not seek to resolve (SPA22, 29), it was mistaken. It is true that the Supreme Court in *Becerra* invalidated a state law that compelled pregnancy centers to disclose the availability of medical services to which they were ideologically opposed. And the Court did so due to a reluctance to regulate speech in "the fields of medicine and public health" and other professions more generally. 585 U.S. at 771-72. Here, by contrast, the Attorney General takes no position on what physicians or other medical

45

professionals may discuss about APR with patients.[5] The Attorney General seeks only to ensure that the *advertisement* of APR, like the advertisement of any medical treatment, is not false or misleading. In *Becerra* itself, the Supreme Court acknowledged a qualitative difference between professional services and the advertising of those services. *See id.* at 771; *see also Kiser*, 831 F.3d at 787 (rule did not ban plaintiff from practicing as a specialist, but from advertising himself as a specialist).

Moreover, the district court scheduled a hearing on the preliminary-injunction motion, but the NIFLA plaintiffs declined to present any witnesses, expert or otherwise. Being "content to rest on affidavits submitted to the District Court," the NIFLA plaintiffs waived their right to resolution of that fact question in their favor. *Consol. Gold Fields PLC v. Minorco S.A.*, 871 F.2d 252, 256 (2d Cir. 1989). The NIFLA plaintiffs accordingly failed to carry their burden to demonstrate that the commercial speech at issue here is not false and misleading and thus

---

[5] Of course, if a physician contravenes standards of medical ethics, a state licensing agency may take action against that physician. And if the physician challenged such licensing action in court, the Attorney General might defend the licensing agency's action.

entitled to First Amendment protection, as necessary to establish a likelihood of success on their free-speech claim.

## B. The District Court Failed To Weigh Properly the Remaining Preliminary-Injunction Factors.

The district court's flawed conclusion that the NIFLA plaintiffs are likely to succeed on the merits of their free-speech claim by itself warrants vacating the preliminary injunction entered below. But the district court's abuse of discretion is compounded by its failure to weigh properly the remaining factors relevant to a decision to grant a preliminary injunction. Those factors favor the Attorney General.

A party seeking a preliminary injunction must separately show a likelihood of irreparable harm in the absence of an injunction, that a preliminary injunction serves the public interest, and that the balance of other equities weighs in favor of a preliminary injunction. *N.Y. Progress & Prot. PAC*, 733 F.3d at 486. Where the party opposing a preliminary injunction is a government entity, harm to the nonmoving party and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The NIFLA plaintiffs failed to carry their burden as to these remaining factors.

### 1. The NIFLA plaintiffs failed to demonstrate irreparable harm warranting a preliminary injunction.

This Court considers irreparable harm in the event an injunction is not granted "to be the most important prerequisite for the issuance of a preliminary injunction." *NAACP, Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995). To assess whether a plaintiff has shown irreparable harm, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quotation omitted).

The district court based its finding of irreparable harm on the general rule that a violation of the free-speech rights secured by the First Amendment necessarily constitutes irreparable harm, reasoning that the NIFLA plaintiffs would suffer irreparable harm every day that the specter of an Attorney General-initiated civil enforcement action unconstitutionally chilled their intended public advertising of APR. (SPA31-33.) The court properly did not explore the irreparable harm that

might have arisen from the NIFLA plaintiffs' other alleged constitutional violations, because when arguing irreparable harm, the NIFLA plaintiffs relied solely on their free-speech rights. (JA621-622, 629.)

It is settled that violations of First Amendment free-speech rights, even for small periods, can constitute irreparable harm supporting a preliminary injunction. *New York Progress & Prot. PAC*, 733 F.3d at 486. But mere allegations of First Amendment violations do not suffice to establish a risk of irreparable harm. *See We The Patriots*, 17 F.4th at 294. As explained *supra* at 33-47, the NIFLA plaintiffs failed to establish a likelihood of success on their free-speech claim. They therefore cannot rely on their alleged constitutional violation to establish a risk of irreparable harm.

The NIFLA plaintiffs also did not identify an independent source of irreparable harm. Nor could they have done so. The Attorney General has not sued or even threatened to sue them. To the contrary, the Attorney General explained that she had reviewed the NIFLA plaintiffs' communications during her investigation and determined that their current speech about APR did not warrant any civil enforcement action against them. (JA774-778.) Although the NIFLA plaintiffs contended

49

below that they felt compelled by the civil enforcement against the HBI defendants to censor their own speech (JA621-622), the Attorney General's submission was sufficient to establish that she would not have premised an enforcement action against the NIFLA plaintiffs on any statements they were already making. And while the district court hypothesized that the Attorney General could reverse course and seek to restrict such statements in the future, "this kind of conjectural chill is not sufficient to establish real and imminent irreparable harm." *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999).

### 2. The preliminary injunction harms the public interest.

Courts should pay "particular regard" to the public consequences of issuing a preliminary injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation omitted). It is the moving party's responsibility to show that the requested preliminary injunction is in the public interest. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012). The NIFLA plaintiffs made no such showing. Instead, they based their public-interest argument on the erroneous assumption that their First Amendment right to free speech protected their intended advertising of

APR, and thus that an injunction would serve the public interest by preventing a violation of constitutional rights.

The district court erred by crediting that argument. As with its irreparable-harm determination, the district court based its public-policy determination on its mistakenly favorable assessment of the merits of the NIFLA plaintiffs' free-speech claim. As explained *supra,* at 33-47, commercial speech that is false or misleading commercial speech garners *no* First Amendment protection, and the NIFLA plaintiffs ailed to carry their burden to show that their intended advertising of APR was noncommercial or commercial but true.

At the same time, enforcement actions like the one the Attorney General has brought against the HBI defendants promote rather than harm the public interest by protecting consumers from false or misleading advertising. Indeed, New York's consumer protection laws are recognized as "powerful tools aiding the Attorney General's efforts to combat fraud in the health care and medical services areas." *Karlin v. IVF Am.*, 93 N.Y.2d 282, 291 (1999); *see also Friedman v. Rogers*, 440 U.S. 1, 15 (1979) (identifying States' interests in protecting the public from misleading business practices as "substantial"). The Attorney

51

General investigated the advertising of APR to the public and commenced an action against the HBI defendants to ensure that pregnant individuals receive accurate information at what can be one of the most vulnerable moments of their lives.

The district court's preliminary injunction disserves this important public interest. The injunction empowers the NIFLA plaintiffs to advertise APR to the public with statements that, as demonstrated *supra,* at 42-44, should have been treated as false or misleading at this stage of the litigation. And the district court has since granted the same injunctive relief to three other limited-service pregnancy centers that filed a copycat lawsuit against the Attorney General. (JA1030-1031.)

Contrary to the view of the district court (SPA30, 33), a preliminary injunction cannot be justified on the basis of any lack of record evidence of harm to identified victims of APR promotional statements. The Attorney General is not required to await the infliction of harm to identified victims of false or misleading advertising before taking legal action against perpetrators of such advertising under New York's consumer protection statutes, which are "'intended to afford a practical means of halting consumer frauds at their incipiency.'" *Oswego Laborers'*

52

*Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (quoting Mem. of Gov. Rockefeller, 1970 N.Y. Legis. Ann., at 472-73); *see also People v. Ernst & Young LLP*, 114 A.D.3d 569, 569-70 (1st Dep't 2014) (actual victims are unnecessary to obtain disgorgement because that relief deters wrongdoing in the first place).

Before the Attorney General even has had an opportunity to convince the state court where its civil enforcement action remains pending that certain pregnancy centers have advertised APR in a manner that is false or misleading, a federal court has preemptively stepped in to issue sweeping relief to a different set of pregnancy centers to permit them to engage in that very advertising. Because such intrusion into good-faith efforts to vindicate important state interests is improper, this Court should vacate the order granting a preliminary injunction to the NIFLA plaintiffs and remand for further proceedings consistent with its decision.

## CONCLUSION

This Court should vacate the district court's order granting a preliminary injunction to the NIFLA Plaintiffs and remand with instructions either to either dismiss the action or for further proceedings consistent with the Court's decision.

Dated:  December 24, 2024
        Albany, New York

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Defendants-
  Appellees

By:  */s/ Jonathan D. Hitsous*

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
JONATHAN D. HITSOUS
  *Assistant Solicitor General*
    *of Counsel*

JONATHAN D. HITSOUS
Assistant Solicitor General

The Capitol
Albany, New York 12224
(518) 776-2044

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Jonathan D. Hitsous, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 10,080 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Jonathan D. Hitsous*